Morning Runners, Mark Serlin on behalf of the appellants. I only want to make a couple of fundamental points because I know that we've covered most of this in the briefs. The first fundamental point is that the right of contribution among contractual joint obligors arises not by contract but by way of equity based on an unequal contribution to payment of a joint debt. The fundamental error that the trust and the lower courts made was treating the right of contribution as somehow arising from the repurchase guarantee. Isn't the real problem here, Mr. Serlin, that your clients expressly and prospectively waived the equitable right of contribution in the repurchase guarantee? Waivers are permissible, but I think that the tripping point is that in order to enforce the waivers as the trust and the lower courts have requested is to ignore the fundamental point that contribution is an equitable right based on payment of a disproportionate amount. I mean, can't it be waived just like any other right? And the problem you've got is that they expressly waived it prospectively. The question I have is what did they waive? I think Judge Tolman is exactly right and the question I have is what did they waive? Because when I put myself in the position of where they were when they executed the guarantee and think about it giving effect to the intent of that contract, that seems to me a very different proposition. Well, I would agree with that and that's why we argued that the waivers were not enforceable by the co-obligors but only by the holder of the guarantee, namely Pulte. And we repeatedly cited paragraph 13 of the guarantee which says that the rights and waivers and so forth are exclusively enforceable by Pulte. Right. So the problem we've got is you rely on paragraph 13 and the other team relies on I think four and five. And so to look at that guarantee we have some tension between the provisions to be sure. I would respectfully disagree with that. I would say that there's no tension between waivers that are in favor of Pulte and Pulte being the only one who can enforce those waivers. Paragraph 13 doesn't use the word enforce. It just says that the guarantee is entered into for the sole protection and benefit of Pulte and nobody else is a direct or indirect beneficiary. Why isn't the best reading of that that that's simply there to prevent some third party from coming in and saying I'm an intended beneficiary of this contract? Well, I think that that's certainly true but I think it applies equally on its face. But Pulte wouldn't have any right, there wouldn't be any right to contribution against Pulte, right, ever. That's right but I think that the... What meaning would that paragraph have if it's read to say that Pulte is the only party that can enforce... It means that the co-obligors such as Alameda have no rights to enforce waivers that were for the specific benefit of Pulte. I put my question poorly. So if the waiver of contribution is enforceable only by Pulte, it's kind of meaningless because Pulte would never be enforcing a right of contribution because it doesn't have one. No, that's exactly... And there's none against it. No, but that's exactly the point. Pulte did have the right to make sure that the co-obligors were not cutting each other up before Pulte got paid. He wanted them to be jointly and separately liable on the putback agreement and he wanted to make sure he could collect against all of them. That's right, but Pulte also wanted to make sure that while Pulte was trying to collect from the joint contractual obligors, that the joint contractual obligors were not spending time, money and resources going after each other before Pulte was paid. That's the key point of paragraph 13, is that the co-obligors are not permitted to destroy themselves before Pulte is made whole. Well, hence, this brings me full circle. That makes sense to me. It brings me full circle to the point about trying to give effect to the party's intention at the time they executed that guarantee. And it seems to me they had this real estate deal. Pulte was not happy with what he had been given, as I understand it, by way of the environmental permits and was not going to go through with the deal. So when I look at the guarantee, it seems to me all of it is one way, except the consideration is that Pulte was going to agree to go forward and close. Is that right? Well, the repurchase guarantee was simply a condition of Pulte's going forward with the deal. That's another way of saying yes. Yes, that's exactly right. Right? That was the deal. He wasn't going to go forward and that was his price. That was his price, yes, that if something went awry upon conditions stated that Pulte would have the right to essentially do a putback and that there was a guarantee by the principles of Pulte's counterparty of that performance. That's correct. So yes, Pulte was the one that had the right to enforce the repurchase guarantee. Right, and that's why, counsel, I think that I disagree with you slightly about the tension within the agreement because I think that context is very important to construing the plain language of that agreement. Right. My point is that it doesn't make economic, legal, or logical sense to treat the waiver of contribution as permanent. Once Pulte is made whole and Pulte gets the benefit of the waiver of contribution as between the co-obligors, there is no reason in law, logic, or equity to disallow the co-obligors to even up their respective payments. But then that renders superfluous the word prospectively, does it not? I'm sorry? Doesn't that argument render superfluous the language of the waiver being prospective? I do not agree. In essence what you're doing is you're putting a termination date on the obligation which doesn't exist in the language of the contract. I disagree because paragraph 12 does have a termination date. It basically says that all of the provisions of the repurchase guarantee shall remain in full force in effect so long as any of the obligations remain unsatisfied. Right. So isn't that why there's some internal tension? Judge Talman's pointing to a provision that talks about a prospective release and you're pointing to the provision that says once Pulte is satisfied, that guarantee goes away. Well no, it doesn't go away. The waiver goes away because it's no longer necessary. Exactly. But I don't see the tension. What I see is that there's a waiver of contribution amongst the joint obligors until such time as Pulte is fully paid. And he was paid, right? That's not disputed? That's not disputed. My clients paid it all. And so it makes complete sense that Pulte is protected at all times by the waivers until such time as it has been satisfied and at that point the purpose of the waivers to protect Pulte is no longer necessary and therefore there's no reason why the joint obligors should not have equitable rights of contribution. So where does the equitable right of contribution come from? It comes from the fact that they're co-obligors. That's right. But the fact that they're co-obligors is only there because of the contract, right? You can't divorce it from the contract. Which contract are we talking about? I'm talking about the repurchase guarantee.  In other words, if Alameda had not been one of the guarantors, they were just somebody else that was out there, Tsakopoulos and Vail would not have any right to go after Alameda for contribution. I suppose that's technically true but I think that that's not the basis of contribution. The basis of contribution under civil code section 1432 is that where joint obligors on a contract where one or more parties have paid more than their proportionate share. But joint obligors on a contract. That's my point is that when you tried to initially sort of divorce the contribution right from anything contractual, it comes from something contractual, doesn't it? Because the fact that they're co-obligors only exists because of the contract, namely the repurchase guarantee. My understanding is your argument is there's a separate common law right to contribution. The right of contribution does not arise by reason of the repurchase guarantee. It arises by reason of disproportionate payment of a joint obligation. Why is it disproportionate? Because my clients paid all of it and Alameda paid none of it. And why is that unfair for Alameda to have paid none of it? Because they're a co-obligor, right? Why are they a co-obligor? Because there's a contract that says they're a co-obligor. I'm not disputing the source of the joint obligation, but the source of the right of contribution is equitable because of disproportionate payment. That's the distinction I'm making. I guess my point is this, and maybe I'm missing something here pretty basic. But, I mean, the way I understand your argument is that once the purpose of the guarantee is satisfied, in other words, Polte gets paid what it got, then the rest of the guarantee kind of disappears. The waiver of contribution disappears. That's my argument, yes. Because the purpose of the waiver has been satisfied and there's no reason why joint obligors should not pay. Why wouldn't the rest of the contract disappear, too? Why is it just that one term, I guess? I guess, and I think we cited case law for the proposition that once the obligation is satisfied, the contractual obligation goes away. Yeah, I guess what I'm trying to get at is it just seems to me that at some level your argument is kind of circular. In other words, the only reason we're even thinking about Alameda is that they have an obligation under this contract to be one of the guarantors. You're saying that once Polte gets paid, then the waiver of contribution doesn't matter anymore because Polte's out of the picture. They don't have to worry about everybody carving each other up and draining all of their money. Correct. And then so the guarantors can go against each other, but the fact that they can go against each other only exists because of this agreement that you say sort of goes poof once Polte is satisfied. To me, it's just kind of circular. I respectfully disagree because I think that while the joint nature of the obligation stems from the existence of the guarantee, I grant you that, the right of contribution stems from the disproportionate satisfaction of the joint obligation. In other words, the right of contribution springs from the disproportionate payment. That's the distinction I'm trying to make. What you haven't done is, and I would have expected your argument to characterize this as that the joint obligation arises from the guarantee and the right to contribution springs from the unequally allocated settlement agreement. Precisely. You haven't framed it that way. Well, you've done a better job than I have. Thank you. You're welcome. Do you want to reserve some time for rebuttal? Sure. Thank you. May it please the court, John Malacinos for the Alameda Liquidating Trust. The liquidating trustee, Hugh Sheffy, is also here. I can't hear you. I'm sorry. The liquidating trustee, Hugh Sheffy, is also here in court. Thank you. I'm just having a little hard time hearing you. I'm sorry. No worries. You're on. So I want to address some of the statements the counsel for appellant made, but I also want to kind of reset where we were. When the original repurchase guarantee was entered into, Alameda was one of the largest home builders in the western United States. The most likely thing that could have happened if Pulte wanted to put back the obligation to the three members was it would come after Alameda and Alameda would come after Vail and Secopolis. So the waivers were actually there to protect Vail and Secopolis originally, I think. I think that's a reasonable reading of the contract. As we stated in our brief, there are four reasons why the court should uphold the rulings below. The first is the way the language of paragraphs 4A, Roman at 5, and 5B work. And as we've cited in the brief and as the court has pointed out this morning, those provisions are in tension with, and we say under law must override, the interpretation that counsel is trying to give to paragraph 12. Well, there is a certain logic to Mr. Sherlin's argument. I mean, basically what he's saying is that the whole purpose of this guarantee was to make sure that Pulte could put the property back and get out whole. And once that's done, it doesn't really matter whether the guarantors are carving each other up or whatever the lingo is. I mean, there's a certain logic to that. What's wrong with that argument? What's wrong with that argument is that the business deal between Vail, Secopolis, and Alameda was that they were in a partnership together. Well, it was a limited liability company, but it was a limited liability company. And yet it owned a piece of land. And the members didn't have any individual liability for that because it was a limited liability company. And the operating agreement excluded them from limited liability. The members said, okay, we have this deal. We want to put the property to Pulte. And Pulte said, well, I'm not going to do this unless you folks step up and guarantee the obligation. And so the members, when faced with that, now they have to step up to the plate. It's not just their company that is doing the deal. They have to put themselves on the line. And they said, okay, we'll do this, but everybody's got to waive their rights of contribution against each other. But that's been both ways, and I don't mean that pejoratively, but we don't have that. We don't really have the deposition testimony or what we would need to figure out who really, in the final analysis, insisted upon that contribution waiver, whether it was Pulte, which is what your opponent wants us to understand, so that they couldn't carve each other up, so that Pulte could really get his $47 million back if he needed to, or whether it's the interpretation that you've just given. Well, that is true, Your Honor, and the case was decided on the contract. But the contract is clear because paragraphs 4 and 5 are clear. They say that the guarantee was clear. You both say they're clear. You know, this happens a lot if you're a judge. People stand up there and say, this is clear. And the truth is, it seems to me there's some tension there. Isn't it possible to read it both ways? I don't think so, Your Honor. I want to answer that question because paragraphs 4A, Roman at 5, and paragraph 5 both specifically refer to things that guarantors are doing. In other, number one. Number two, paragraph 4A, Roman at 5, precisely tracks the language of California Civil Code Section 2856A, which provides for the waiver of this very right. But you also have, I think it's paragraph 12 that says once Pulte is satisfied, that agreement goes poof. Paragraph 12 does not say that, Your Honor. Which paragraph is it? One of the paragraphs. Well, that's counsel's interpretation. But paragraph 12 says that all the covenants, agreements, representations, and warranties shall continue in full force and effect so long as the repurchase obligation remains unsatisfied. Right. And it was satisfied. But Pulte's trying to. That's the poof part. Well, but there's no only in there. It says shall continue. It doesn't say they'll go poof. It says they shall continue. It doesn't say. Until it's satisfied. And it was satisfied. It says so long as, and perhaps that's until. It's until. But even. And so, counsel, let's just. So what is your response to that, please? My response is two things. First, under rules of contractual interpretation, the more specific provisions in four and five override or must be read at least in harmony with that provision. Right. And that's the provision. That argument you've made in your brief I think quite clearly, that you think four and five are more specific, right? Correct. And then the second thing that's so important, and it's in our brief on page 18, is that there are all these other provisions where it does say Pulte specifically in the contract. So in the repurchase guarantee. So when the parties wanted to put Pulte in there, they did. For instance, in paragraph 4B, it says relies by Pulte. In paragraph 4D, it says require Pulte. Paragraph 5C talks about Pulte. So there are plenty of provisions. When the parties wanted to put Pulte in there, they did it. So if the waiver of contribution was in there, as you say, for the protection of the guarantors from each other, what is the meaning of the paragraph 13, the one that says sole protection and benefit of Pulte? I think, Your Honor, I think that Your Honor made the point very clearly that that provision appears to be a typical contractual provision saying nobody else can come in and say that they can pick up the benefit of this agreement. It reads a little bit more broadly in light of the other language, but again, the specific provision, it needs to be read in harmony under California law with those provisions. But, counsel, I think you're – I would be making that argument, too, but when I take a step back and read that guarantee in toto, it seems to me it's a very one-way deal, and it was the condition – I just want to give you an opportunity to respond to that, but it just seems to me pretty clearly it was a condition that Pulte extracted, and the only consideration, the only obligation by Pulte is that he'd close. Well, that may be – Otherwise he wasn't going to do the deal, right? That's true, but also the members of the limited liability company had to agree to become obligated, and we don't know – That's what he extracted, right? He said you're going to have to personally step up. Correct, but the members didn't have to agree to that. He could have said no. They had no obligation to do so. So presumably the members – just like Pulte put its language in, the members were putting their own language in vis-à-vis each other Yes, I'm not suggesting that there was any, you know, duress here. It seems to me that people went in eyes open, but the question is, what is it they agreed to? And my question was, shouldn't I read that guarantee as being a very one-way deal? I think, Your Honor, if it didn't say in 4A and 5, and specifically talk about guarantors' rights to themselves and very broadly waive their rights in 4 and 5, then I don't think it is a one-way deal. And the other argument – Well, isn't contract interpretation law in California – it's been a while since I took the California bar exam – but isn't the rule that in interpreting the provisions of a contract we have to consider the provisions in the contract as a whole and that you can't just isolate one provision to the exclusion of all other provisions of the contract? That's correct, Your Honor. And as we've stated in our brief, you have to try to, if you can, harmonize all the provisions, but there are also these doctrines that if you have a specific provision, it would override the other provisions. So we do think that you can – the Court is quite correct in remarking on these provisions and it's exactly the same thing that the Bankruptcy Court remarked on and exactly the same thing that the District Court remarked on. But when the contract is actually read in context and these rules of statutory construction are applied, the provisions in 4A, 5, and paragraph 5 have to have meaning. And, of course, there are two more issues beyond that. Let me ask, before you get on, let me ask one thing. When this case was in front of the Bankruptcy Court, did either side argue, hey, this thing is ambiguous and we want to put in evidence to show why this waiver term was in there? I think not, but I just wanted to ask that question. Well, Mr. Zacopoulos submitted evidence regarding the note that he received. Yeah. I'm talking about the waiver of the – the waiver of the contribution. No, there was no – the Bankruptcy Court decided that the contract was not – Could be interpreted without parole evidence. Could be interpreted without the other evidence. But I think the question was not what the Bankruptcy Court decided, but what the parties argued. Did anybody argue there was ambiguity or context that needed to be considered? I don't recall that. Everyone agreed on the principle that there certainly was a waiver of rights of contribution at some point. The question was when did it go away, and Judge Carroll found that paragraph 12 didn't mean – didn't – Again, I know what the judge found. I was just asking – No, no, no, no. I don't – that was not argued. Nobody was saying, no, we need to stop. We need to take some testimony about this. But the other two arguments that are so important are the one that Judge Cannelia – I hope I'm pronouncing that correctly – That's right. – stated, which is if the contract goes away, there is no joint obligation. So really, as we state in the brief, appellant's argument proves too much. If the contract and the waivers are gone, there is no obligation to the line. Could you – I think that's a really good point, and it goes back to the question that we just ended on with your opponent, which is if you look at the guarantee and recognize that's the document by which the obligation, the joint obligation sprang, why isn't he right that the obligation to contribute springs from the settlement agreement because the settlement agreement is the document where we see that the obligation was satisfied inequitably, unevenly, I should say. Well, the reason is Alameda was not a party to the settlement agreement, number one. And number two – Why would it need to be a party to the settlement – that's a typical case when we're talking about contribution. They got a release in the settlement agreement. That's typical, counsel. And they got a release in the settlement agreement. They did get a release, which was very atypical for two joint – Oh, no, it's not. You don't think – well – No, not once they're jointly and severally liable. Of course it's not. Well, to the extent there are two people, two parties who say they're co-obligors just get a release for the other party who's not there. And thereby get a release from themselves, right? Because otherwise they're still on the hook for the other guys if they're jointly and severally liable. Well, that's right, and that's why under Code of Civil Procedure 877B the provision of the release to Alameda actually cuts off the right of contribution. On a totally separate ground, whether or not whatever this agreement says, as the district court found, under 877B, once Alameda received the release, the right of contribution is cut off. And there were some very good reasons for that. So one of them – there are some good reasons that one can – But you are getting ready to shift gears rather than responding to the first question, so. I'm sorry. I thought I was trying to. The question is why is – why don't they – I'm sorry. That's okay. Why is he wrong that he can't look at the guarantee as the contract from which the joint obligation arose and look to the settlement agreement as the contract from which the right to contribution arises? Because there is no obligation for Alameda to pay one dime to Pulte except because of the repurchase guarantee, because Pulte did business with the limited liability company. That's the obligation part. He agrees with you about that. That's the obligation part. What about the right to contribution part? Why is he wrong that that can't spring this from the settlement agreement? Well, for one reason, under the Moscone case, which I don't have here, there has to be some underlying obligation. And I can get that in a minute. The other thing is – About the underlying obligation. We've got that. Well, there has to be some. And so the – I don't think you can create an obligation by someone just by paying something for them if there isn't otherwise an obligation. I mean, either the repurchase guarantee is there or not. If it's not there, you can't pay to Pulte and then say, well, I paid, so you should pay. That's number one. And then number two is that there should be – that the agreement should be read to waive the rights to contribution under Section 1432, although if the agreement is gone, then it can't. And then the ultimate answer, though, I think, is California Code of Civil Procedure 877B, that once the release is received, there is no more right to contribution, period. And it's kind of a head-scratcher about why that release was given. One of the reasons might have been that the parties didn't want Pulte to go to Alameda and then have Alameda have a claim back. Another reason might have been that Socopolis was receiving the property himself back. That's in the record. So there are all sorts of reasons for that. One of the other things I wanted to mention was that we argued that the standard should be clear error because we felt that Judge Peral actually made findings on the contract, and I realize that's not necessarily free from controversy about what the standard should be. Just to be clear, you're arguing that he interpreted a contract without doing any factual digging, right? You want to look at the 12B6 level of the contract, and I think you're arguing that he made findings of fact. That's how you get to your standard of review, isn't it? That's correct. And I was going to say that there is an argument that, well, it's just contractual interpretation. There are really no disputed facts that have to be found. It seems to me that would be your argument, right? And I think that may be the case, and the point I wanted to make is that even if that is the case, this is an objection to claim, so the ultimate burden of persuasion remains on the appellants, and that's in the original objection, which is at page 383 of the record. You're on. I think I'm out of time. You are out of time. Thank you very much. Thank you. Mr. Sirlein, I think you had a little bit of time left. Thank you. I'd like to point the court to paragraph 14 of the repurchase guarantee, which says that the provisions shall be enforceable by Pulte and its successors and assigns. Paragraph 14? That's right. And also paragraph 16, which talks about that this is a jointly negotiated agreement and it's all for the benefit of Pulte, because that was also raised. Mr. Melisinos made a reference to the waiver allowed under Civil Code 2856, and as we argued in our briefs, that relates to a set of surety defenses that does not include Civil Code section 1432. And I go back to the suggestion of tension, and I think that, as the court has recognized, when the contract is read as a whole, I think that the tension really isn't there. It's the benefits of whatever waivers are for Pulte. Pulte is the sole party that has the right to enforce these things. Pulte got the benefit of its bargain by getting paid, and there's really no reason why the equitable rights of contribution, the contract having been satisfied as to its purpose, shouldn't be allowed. Finally, Mr. Melisinos made reference to Civil Code section, I think it's CCP 877. This was raised sua sponte by the district court. It wasn't even argued at the bankruptcy court, and as we pointed out in our briefs, 877 applies only to obligations arising out of a joint tort. Well, even if it didn't, it has to be a good faith finding, right? Correct, and there was none. So 877 simply doesn't apply. I'll happily answer any other questions, but I think I've said what I can say. I think we have the parties' positions well in hand. Thank you, Mr. Sterling. Thank you, Your Honors. The case just argued is submitted. We'll get you a decision as soon as we can.
judges: Tallman, Christen, Kennelly